**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KOREA TATE,

                Plaintiff,

- v -

ACACIA NETWORK, INC., ALBERTO LOPEZ and JESSICA TORRES, individually,

                Defendants.

Civil Action No.: 23-cv-2994

**COMPLAINT**

*Jury Trial Demanded*

      Plaintiff Korea Tate ("Tate"), by and through her undersigned attorney, brings this Complaint against Defendants Acacia Network, Inc. ("Acacia"), Alberto Lopez ("Lopez") and Jessica Torres ("Torres"), and alleges as follows:

## PRELIMINARY STATEMENT

      1.     This is an action for sexual harassment, gender discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq., the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq., the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq.

## JURISDICTION, VENUE, AND PROCEDURAL REQUIREMENTS

      2.     The Court has original jurisdiction over Tate's federal claims pursuant to 28 U.S.C. §§ 1331, 1343.

      3.     The Court has supplemental jurisdiction over Tate's state and city law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy.

      4.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred there.

5. All conditions precedent to filing the instant action have been fulfilled. On or about October 8, 2021, Tate submitted a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). On or about February 2, 2023, the EEOC issued Tate a Notice of Right to Sue, and this action is being brought within 90 days of Tate's receipt of the Notice of Right to Sue.

6. Within 10 days of the commencement of this action, Tate will provide notice of this action to the New York City Commission on Human Rights and Corporation counsel, pursuant to the New York City Administrative Code § 8-502(c).

## PARTIES

7. Plaintiff Tate is a resident of the State of New York and former case manager of Acacia.

8. At all relevant times, Tate was an "employee" of Defendants under all relevant statutes.

9. Acacia is a corporation registered in New York and permitted to do business in New York.

10. Acacia employed more than 14 employees throughout Tate's employment.

11. Acacia conducted business at 980 Prospect Ave, Bronx, NY 10459, where it employed Tate.

12. Defendant Lopez was at all relevant times employed by Acacia as its director of operations.

13. Lopez had the ability to affect the terms and conditions of Tate's employment by, among other things, overseeing her work, evaluating her performance and providing feedback, and terminating her employment.

14. Defendant Torres was at all relevant times employed by Acacia as its program director.

15. Torres had the ability to affect the terms and conditions of Tate's employment and did so by, among other things, assigning her work, overseeing her work, evaluating her performance and providing feedback, and terminating her employment.

16. Upon information and belief, Lopez resides in New York.

17. Upon information and belief, Torres resides in New York.

18. At all relevant times, Defendants were Tate's "employer" under all relevant statutes.

## FACTUAL BACKGROUND

19. Tate received Bachelor of Science degree in Human Development with a concentration in Psychology from SUNY Empire State College in 2012.

20. Tate is currently attending John Jay College of Criminal Justice for her Master's degree in Forensic Mental Health Counseling.

21. In or about June 2021, Tate began working for Acacia in the position of case manager.

22. Tate worked from Acacia's 980 Prospect Ave, Bronx, NY 10459 location.

23. Tate succeeded in her role and received positive feedback based on her performance, including from Torres and Tashika Burton, Acacia's senior case manager.

24. In or about July 2021, Torres began paying Tate excessive attention and flirting with her throughout the workday.

25. Torres would stare at Tate from the hallway outside her office door intermittently throughout the workday.

26. Torres would ask Tate to come to her office to eat lunch with her nearly everyday.

27. Torres told Tate that Torres had a wife previously and that, although she now was married to a man with children, she still preferred women.

28. Ms. Burton told Tate that she believed Torres was only married to a man now to appease Torres' family, but still preferred women.

29. Ms. Burton, who interviewed and hired Tate, informed Tate that she knew Tate was a lesbian and could be a potential romantic match for Torres when she hired Tate.

30. Ms. Burton informed Tate that Torres was bisexual.

31. Ms. Burton informed Tate that she looked like a woman Torres had an eight-year relationship with in the past.

32. Ms. Burton told Tate that she should "take one for the team" by giving in to Torres' sexual advances.

33. When it became clear to Tate that Torres was interested in more than a professional relationship with her, Tate told Torres that she wanted to focus on work and asked for some space to do so.

34. On or around July 13, 2021, when Tate was leaving Torres office, Torres walked behind her, put her hands on Tate's shoulders and started massaging her.

35. Tate shifted her shoulders and moved forward to get out of Torres' grasp.

36. Tate again made it clear to Torres that she was not interested and wanted to keep their relationship strictly professional.

37. On or around July 16, 2021, when Tate entered Torres' office, Mr. Lopez put his hand inside Tate's right pant pocket in front of Torres.

38. Tate froze and asked Lopez why his hand was in her pocket.

39. Lopez acknowledged that putting his hand in Tate's pocket was inappropriate, apologized, and removed his hand.

40. Torres watched Lopez put his hand in Tate's pocket but did not intervene.

41. Tate reported these incidents, among others, to the attention of Acacia through formal and informal complaints.

42. On July 16, 2021, Tate submitted a complaint to Acacia via its "Employee/Witness Statement Form," including that Lopez placed his hand in her pocket.

43. On July 16, 2021, Tate informed Acacia's director of human resources, Erik Alicea, that Lopez placed his hand in her pocket.

44. Tate explained to Acacia that she just wanted to be treated professionally so that she could work in peace.

45. Shortly after Tate's complaints, Ms. Burton informed Tate that, because of her, the staff all had to retake their sexual harassment training.

46. On or about July 27, 2021, Ms. Burton apologized to Tate for failing to address Tate's sexual harassment complaints.

47. Ms. Burton told Tate that Tate had enough "ammo" and information to file a lawsuit against Acacia.

48. Ms. Burton told Tate that she was a great case manager, had a bright future ahead of her, and was not aware that Torres' sexual advancements toward Tate had become so severe.

49. On July 27, 2021, Tate wrote to Mr. Alicea, asking whether he had any update regarding her report of Lopez putting his hand in her pocket.

50. On July 28, 2021, Tate again wrote to Mr. Alicea regarding Lopez putting his hand in her pocket as well as the incidents she reported involving Torres.

51. On July 29, 2021, Mr. Alicea responded to Ms. Tate: "I need to schedule a date and time to speak with you as there is a difference in the statements provided."

52. On or about August 5, 2021, when Tate returned from her lunch break, she was escorted from the building and told not to return pending investigation of her sexual harassment complaints.

53. On August 6, 2021, Tate wrote to Mr. Alicea and Amarilis Soler, Acacia's Assistant Vice President, regarding the sexual harassment she experienced from Lopez and Torres, which remained unaddressed.

54. On August 9, 2021, Tate wrote to Acacia to clarify whether she had been fired or placed on leave pending the investigation.

55. On August 10 and 12, Acacia responded that it was reviewing the complaints and information Tate submitted but would not tell her my employment status.

56. On August 17, 2021, Acacia wrote that "Management and Human Resources have spoken, and they are ready to give the final decision."

57. On August 18, 2021, Acacia informed Tate that because her complaints were her word versus theirs, they could not be sure they were true and would be terminating Tate's employment with Acacia.

58. Acacia told Tate that she would receive a termination letter in the mail.

59. On September 10, 2021, Tate asked Acacia for a copy of the termination letter since it never arrived.

60. Acacia never responded to Tate's request.

## FIRST CAUSE OF ACTION
### (Discrimination in Violation of Title VII)
*Against Defendant Acacia*

61. Tate repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

62. By the actions described above, among others, Defendant discriminated against Tate by, inter alia, subjecting her to disparate treatment because of her membership in a protected class.

63. Defendants were aware that Tate was a female and lesbian.

64. Defendant violated Title VII by subjecting Tate to this behavior based, in whole or in part, upon her membership in those protected classes.

65. As set forth in detail above and herein, Acacia discriminated against Tate and subjected her to adverse employment actions including, but not limited to, terminating her employment.

66. As a direct and proximate result of Defendant's unlawful employment practices, Tate has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

67. Accordingly, Defendant discriminated against Tate because of her gender and sexual orientation, in violation of her rights under Title VII.

68. Defendant's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Tate, entitling her to punitive damages.

## SECOND CAUSE OF ACTION
### (Hostile Work Environment in Violation of Title VII)
*Against Defendant Acacia*

69. Tate repeats and re-alleges each allegation of the preceding paragraphs as if fully

set forth herein.

70. Defendants' actions and comments against Tate taken cumulatively subjected her to inferior terms, conditions or privileges of employment.

71. Acacia did not remedy the hostile work environment despite Tate's complaints.

72. Acacia thereby discriminated against Tate on the basis of her membership in a protected class by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a discriminatory environment.

73. As a direct and proximate result of the unlawful discriminatory conduct carried out by Acacia, Tate has suffered, and continues to suffer, emotional distress for which she is entitled to an award of monetary damages and other relief.

74. Acacia's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Tate, entitling her to punitive damages.

## THIRD CAUSE OF ACTION
### (Retaliation in Violation of Title VII)
*Against Defendant Acacia*

75. Tate repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

76. As set forth in detail above, Tate engaged in activity protected under Title VII.

77. Acacia was aware that Tate opposed unlawful conduct and/or asserted her rights under Title VII.

78. Acacia, unlawfully and without cause, retaliated against Tate as a direct result of Tate asserting her rights under Title VII, and Tate suffered materially adverse employment actions as a result.

79. As a direct and proximate result of Acacia's unlawful employment practices, Tate

has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

80. Acacia's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Tate, entitling her to punitive damages.

81. Accordingly, Acacia retaliated against Tate in violation of her statutory rights as guaranteed by Title VII.

**FOURTH CAUSE OF ACTION**
**(Discrimination in Violation of the NYSHRL)**
*Against All Defendants*

82. Tate repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

83. The aforementioned facts and circumstances demonstrate that Defendants discriminated against Tate because she was a member of a protected class.

84. Tate is a member of a protected class under the NYSHRL and was perceived by Defendants as such.

85. As set forth in detail above and here, Defendants discriminated against Tate and subjected her to adverse employment actions.

86. As a direct and proximate result of the unlawful employment practices of Defendants, Tate has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

87. Accordingly, Defendants discriminated against Tate because of her gender and sexual orientation, in violation of her statutory rights as guaranteed by the NYSHRL.

## FIFTH CAUSE OF ACTION
### (Hostile Work Environment in Violation of the NYSHRL)
*Against All Defendants*

88. Tate repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

89. Defendants' actions and comments against Tate taken cumulatively subjected her to inferior terms, conditions or privileges of employment.

90. Defendant did not remedy the hostile work environment despite Tate's complaints.

91. Defendants thereby discriminated against Tate on the basis of her membership in a protected class by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a discriminatory environment.

92. As a direct and proximate result of the unlawful discriminatory conduct carried out by Defendant, Tate has suffered, and continues to suffer, emotional distress for which she is entitled to an award of monetary damages and other relief.

93. Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Tate, entitling her to punitive damages.

## SIXTH CAUSE OF ACTION
### (Retaliation in Violation of the NYSHRL)
*Against All Defendants*

94. Tate repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

95. As set forth in detail above, Tate engaged in activity protected under the NYSHRL.

96. Defendants retaliated by subjecting Tate to discrimination and adverse

employment actions because of her protected activity in violation of Tate's statutory rights.

97. Defendant was aware that Tate opposed unlawful conduct and asserted her rights under the NYSHRL.

98. Tate has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

99. Accordingly, Defendants retaliated against Tate in violation of her statutory rights as guaranteed by the NYSHRL.

## SEVENTH CAUSE OF ACTION
### (Discrimination in Violation of the NYCHRL)
*Against All Defendants*

100. Tate repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

101. The aforementioned facts and circumstances demonstrate that Defendants discriminated against Tate because she was a member of a protected class.

102. Tate is a member of a protected class under the NYCHRL and was perceived by Defendants as such.

103. As set forth in detail above and here, Defendants discriminated against Tate in the terms and conditions of her employment by treating Tate less well than similarly situated coworkers.

104. Defendants subjected Tate to adverse employment action because of her gender and sexual orientation.

105. As a direct and proximate result of the unlawful employment practices of Defendants, Tate has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

106. The conduct of Defendants has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Tate, entitling her to punitive damages.

107. Accordingly, Defendants discriminated against Tate because of her gender and sexual orientation, in violation of her statutory rights as guaranteed by the NYCHRL.

## EIGHTH CAUSE OF ACTION
### (Hostile Work Environment in Violation of the NYCHRL)
*Against All Defendants*

108. Tate repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

109. Defendant's actions and comments against Tate taken cumulatively subjected her to inferior terms, conditions or privileges of employment.

110. Defendant did not remedy the hostile work environment despite Tate's complaints.

111. Defendant thereby discriminated against Tate on the basis of her membership in a protected class by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a discriminatory environment.

112. As a direct and proximate result of the unlawful discriminatory conduct carried out by Defendant, Tate has suffered, and continues to suffer, emotional distress for which she is entitled to an award of monetary damages and other relief.

113. Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Tate, entitling her to punitive damages.

## NINTH CAUSE OF ACTION
### (Retaliation in Violation of the NYCHRL)
*Against All Defendants*

114. Tate repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

115. As set forth in detail above, Tate engaged in activity protected under the NYCHRL.

116. Defendants retaliated against Tate by treating her less well than similarly situated employees and subjecting her to discrimination and adverse employment actions because of her protected activity in violation of the NYCHRL.

117. Defendant was aware that Tate opposed unlawful conduct and/or asserted her rights under the NYCHRL.

118. Defendants, unlawfully and without cause, retaliated against Tate as a direct result of Tate asserting her rights and opposing unlawful conduct under the NYCHRL, which involved conduct reasonably likely to deter an individual from engaging in such protected activity.

119. As a direct and proximate result of Defendants' unlawful employment practices, Tate has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

120. The conduct of Defendants has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Tate, entitling her to punitive damages.

121. Accordingly, Defendants retaliated against Tate in violation of her statutory rights as guaranteed by the NYCHRL.

## TENTH CAUSE OF ACTION
### (Aiding and Abetting in Violation the NYSHRL and NYCHRL)
*Against Lopez and Torres*

122. Tate repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

123. Defendants Lopez and Torres aided, abetted, incited, compelled, or coerced Defendants' unlawful conduct, including discrimination and retaliation, against Tate by their conduct, action, and inaction, in violation of the NYSHRL and NYCHRL.

124. Lopez and Torres were aware of their role as part of the unlawful activity that they assisted in, and knowingly and substantially assisted Defendant in its violations of the NYSHRL and NYCHRL.

125. As a direct and proximate result of Lopez's and Torres' conduct, Tate has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

126. Lopez's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Tate, entitling her to punitive damages.

## RELIEF

Plaintiff Korea Tate demands judgment in her favor and against Defendants Acacia Network, Inc., Alberto Lopez, and Jessica Torres as follows:

A. A declaratory judgment that the actions of Defendants complained of violate NYCHRL, NYSHRL, and Title VII;

B. An injunction and order permanently restraining Defendants from engaging in any such further unlawful conduct;

C. An award of damages against Defendants, in an amount to be determined at trial,

plus prejudgment interest, to compensate Tate for all monetary and/or economic damages, including but not limited to past and future lost earnings;

D. An award of damages against Defendants, in an amount to be determined at trial, plus prejudgment interest, to compensate Tate for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her emotional distress;

E. An award of punitive damages, in an amount to be determined at trial;

F. Prejudgment interest on all amounts due;

G. An award of Tate's reasonable attorneys' fees and costs to the fullest extent permitted by law; and

H. Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Korea Tate demands a trial by jury on all issues so triable of right.

Dated: April 10, 2023
New York, New York

**RISSMILLER PLLC**

By: */s/ Alex Rissmiller*
Alex Rissmiller
5 Pennsylvania Plaza, 19th Floor
New York, NY 10001
T: (646) 664-1412
arissmiller@rissmiller.com

*Attorney for Plaintiff Korea Tate*